Case No. 15-1445 et al., American Baptist Homes of the West, doing business as Piedmont Gardens Petitioner v. National Labor Relations Board. Mr. Durham for the petitioner, Ms. Isbell for the respondent, Mr. Rosenfeld for the intervener. Mr. Durham. Good morning, Your Honors. This case involves an important area for employers, that is workplace investigations and the ability to do them in a thorough way and for employees to actually feel comfortable coming forward. The case here was a 3-2 decision of the Labor Board overruling Anheuser-Busch, a 38-year-old president, which created a bright line test saying witness statements are fundamentally different than other kinds of information, therefore you don't have to provide them. The most important result of that, I submit, is not that you merely don't have to provide them, but knowing you don't have to provide them, you can provide assurances to witnesses that, hey, we're not going to turn this over to the union. Before we get into that argument, which is about the new rule, can you talk about your standing to argue that rule? Absolutely. The issue here is are we an aggrieved party under 10E? And first, that's the first issue I submit. I think it's fairly clear we are. What about the Article 3 issue? Well, the same thing. We are aggrieved here in that we have – this is not a hypothetical situation. We are the subject of an injunction. And that's the way I read your brief. So you fear that if you don't follow the new rule, you'll be subject to contempt rather than the way all other employers are. Correct. We are different. We're the only ones in America that have that situation. And it's not contempt necessarily. There's a couple of steps. There's an enforcement proceeding first before the board. Right. But to distinguish yourself from the other employer. Right. So that depends on – and I guess I need to ask the NLRB, too – but this just depends on the language in the DNO, which requires you to – I'm just trying to find it exactly. It sounds like rather the normal failing and refusing to bargain in good faith. And refusing to provide information. Yeah, yeah. But my point on that is – That sounds like the normal boilerplate. How do we know that what they are saying, that that isn't what – imagine they didn't announce a new rule. And imagine all they did was find the one violation with respect to Hutton. This would be the exact same order. The wording would be the same. Yes, yes. But the difference is we were a party to the underlying litigation. And we know exactly what that wording means because we have the decision in front of us. And we can't be assured, Your Honor. That's the point. Can I tell my client that, hey, just ignore that order? Yeah, you can't yet. But maybe at the end of this discussion you can. I want to hear what the NLRB thinks about this. And then, of course, one thing we could say is that you should be treated as any employer. Now, assuming that's the case, then we only need to look at the Hutton question. Is that right? Correct. If there was a legal ruling that we could continue without violating any existing order to apply our former policy and to do blankets of – Well, you would know what the board's view about what they would apply in the next case would be. But that would still be all right. Correct. Just like any other employer. Just like any other employer. As long as we could take it to the bank, Your Honor. That's the key. Yeah, I understand. I understand. Okay. So that's our position there. And our position, again, is that we cannot violate the rule with impunity. So is that sufficient for discussion, for Your Honor? Yes, I think you've explained the standing argument. Okay. All right. So regarding the merits, again, I think keep it simple here. You know, they changed the rule, the three-to-two decision. We understand that. But the point here is this is not a simple academic exercise. What they did is, the reasoning was, we're just not persuaded that the board in 1978 was correct in their reasoning. They called it flawed. They said, we disagree with it. We don't think a statement is any different than any other piece of evidence. End of story. The problem is, is in doing so, they created a major policy decision. They changed 38 years of unbroken precedent, the rules of the road for everybody, so it was a policy decision. It's not merely just, you know, now we have three votes, so we used to have two, so now the rule's different. And when you do a policy decision, this court and the Supreme Court and virtually every other says, there's certain things you have to do. You can't just say, oh, here's the new rule. You have to, if you change the rule, you have to articulate reasons why. And more importantly, I think, you have to hear where the change of the rule not only impacts the National Labor Relations Act, it impacts the whole rest of the world. Every ability for the company to do investigations on sexual harassment, violence, or in this case, patient neglect. Can I just interrupt to make sure I understand the facts right? The three witness statements all came from charged nurses. No, one was from a nurse's aide, Your Honor. That was the new person? Yeah, I don't remember the names, Your Honor, but one was a charged nurse. The two that they did not apply retroactively, one was a charged nurse, one was a CNA, a fellow CNA union member. The Hutton one was another charged nurse. So does it, what's the significance of the fact that the board treated all the witnesses the same? I mean, because one could say, well, with respect to witnesses who are in a kind of supervisory relationship over the accused, so to speak, or the person who's being investigated, it's part of their job, right, to report misconduct, et cetera. So it would seem that there's a lesser need for promise of confidentiality there as opposed to someone who's not really in the supervisory role, but the board seemed to treat them all the same. That's right, Your Honor. That could be a distinction, but I think, again, the point for us for the review is what did the board say? What was their reasoning? And they didn't give us any reasoning. That's my whole point here, I think. I think you do have a point. You're right, they didn't give any reasoning. No, let me explain what they did. It's really interesting. I read it. I think it's hard to describe this as no reasoning. Well, no. You may not like the reasoning, but. Well, no, let me explain. Let's deal with balancing first. That's the critical. Everybody knows you have to balance. They can't operate in a bubble. The labor board can't say the National Labor Relations Act is all that matters and we don't care about anything else. So they have to balance them. So what did they do? There's the interest on one side in the union getting the witness statements. They don't explain in the decision why that's important. When they get all of this information they're entitled to, why adding this little additional leaf on the top of it matters that much. Or how important it is. There's nothing in there that says this is important. They said it's important because the union has to know whether to, you know, support the employee. Right, but they have all this other information. They didn't explain why this incremental amount matters. And in balancing it, that's the key. When then you balance it against all the other interests of intimidation of witnesses and all of those kinds of things. Well, I can tell you as a former public defender where I never got witness statements from the government and had to go out and dig them up myself. It made a heck of a lot of difference. Well, that's right, but let the union dig them up themselves. Who says they can't? I mean, that's the other point on this. But I don't understand when you say that we've held that these kinds of changes of position create some kind of higher responsibility for explanation. That's not right. No, I think they do have some explanation. Yes. But here's what they did. But what they did was rebalanced. No, they didn't. I respectfully submit they didn't rebalance. What they said is we're not convinced that the decision was right. They said that they assured employers that their interests, they would still be able to conduct fair investigations, but a conclusory assurance is not sufficient. They're not experts in what it takes to do a fair investigation. They don't have any particular expertise. There's no facts finding that it won't be injured in spite of the fact that the Supreme Court in Robbins said that, hey, the risk in these kinds of situations are obvious and inherent. Those are the words they used. That was under FOIA, of course. What kind of promise of confidentiality did the employer make here? Well, that's actually a Hutton case, the issue on that. No, but as a general matter, this background. In two of the people, they gave an explicit contemporaneous. And what was the promise? That we will not turn this, they would be kept confidential. We will not turn it over to the union. They could not have made that, right? That would be false. Well, they did. Well, but Anheuser-Busch applies only to pre-arbitration disclosure, right? That's what this was. But you can't promise somebody that you will never turn it over to the union because nothing protects you once the arbitration begins, right? I don't think that's correct. But you're subject to a subpoena for act, but we would fight it on the basis that it's more important. But there's nothing in the Anheuser-Busch rule that says that you never have to turn it over. It just says you don't have to turn it over pre-arbitration, right? No, it said you don't have to turn it over, and that was a pre-arbitration case. Well, all the dissenters on your side described this as a disclosure pre-arbitration. And likewise, the Robinson, and in fact, in Anheuser-Busch, they did have to disclose it afterwards. The statements were disclosed, and the people had to testify. So if you tell an employee, don't worry, you tell us all this, and we will never tell the union or the person you are talking about, that wouldn't be right. There's a risk that you will have to turn over the statements, and there's a risk that the employee will have to testify. Isn't that right? There is a risk that that's true, but the point is there is no countervailing rule in arbitration, like there is in NLRB cases, that you must turn over witness statements after the person testifies on correct examination. And we do not turn over these things in arbitrations. We would fight it to the tooth and nail. So the fact that there is some possible of collateral litigation that would force it, I don't think takes away from the point that we can say in good faith that we will keep these confidential. And the point is that it is what they tell you. And did the witnesses have to testify? No, none of the witnesses testified. It was never an arbitration. Okay, but if there is an arbitration, so in Anheuser-Busch, five of the six witnesses had to testify. That's possible. Depends on the situation. That's right. And if there's an unfair labor practice hearing, they may have to testify, right? But there's no basis for us knowing there's an unfair labor practice hearing. No, no, but talking about the rule in general. That's a different rule, correct. In the unfair labor practice, on the Jenks rule, they have to turn over. Right, and some of these might lead to unfair labor. Not in your case. I understand that. But when you're talking about a blanket rule, in some cases witnesses will have to testify in unfair labor practice hearings. But that doesn't mean that the employer has to turn over its witness statements. Jenks only requires the labor board to turn over its witness statements. I'm not talking about them having to testify. Testify is a different thing. Right. So the concern that somebody may not come forward and tell about misconduct, you can't promise them confidentiality, because the way you know that there is misconduct is they told you. And if you are going to defend yourself, you the employer, either in arbitration or in an unfair labor practice hearing, somebody is going to have to testify on your side. Your Honor, we never promised them confidentiality, period. We said the witness statement would not be turned over to the union. That's the difference. And notwithstanding the fact that in some cases they are turned over. It's conceivable, but the point is we don't think there is a reason to turn them over. So I haven't read anywhere in the papers here that says that the nature of the promise was not to turn over the witness statement. I thought it was just a promise of confidentiality. No, I believe it was we're not going to turn over the witness statement. So we keep witness statements confidential and will not be turned over. And there were the two express statements, and then there was the Hutton situation, where there was no express statement, but she was aware of the fact the statements would be kept confidential. She relied upon it and said she would, in fact, consider quitting if she didn't do it. And that's the other point. If I could just use a little more time. But the judge didn't agree with that, right? The ALJ found that that was not a truthful statement on her part. No, no, the judge found that the Hutton statement did not need to be turned over, that the blanket policy was sufficient confidentiality. No, no, but the ALJ found that she only submitted her statement to avoid being disciplined more severely for ignoring Mr. Barabat's sleeping when the new charge nurse in training blew the whistle. Your Honor, motive is irrelevant. The point is what was the knowledge? Were they aware? Nothing in the judge's decision said she was not aware of the policy. No, but I thought you just said that she would not have come forward but for the... She testified to that. The judge found contrary. It was no need for me to even say it because motive is completely irrelevant. The only issue is did they have a reason to believe that it would be kept confidential. So then the argument about the Hutton statement is whether it's consistent or that ruling is consistent or inconsistent with the board's precedent, right? Right, the point is, Your Honor, is that there's never been a case dealing with that as to what the specific amount was necessary, whether a rule or something posted on the wall was enough or whether you had to do a contemporaneous. And the board cited two cases that don't stand for that. Yeah, so it cited El Paso and New Jersey, which you think don't stand for the rule. Because there was no confidentiality evidence at all, so the board never had to answer that. Even the two dissenters thought that those cases did stand for the rule. One of the dissenters saying it would therefore have to follow, I think it's a he, would have to follow. The other one said, I'm not going to follow those, right? Your Honor, I can't be responsible for what the dissenters said. The bottom line is the cases don't say that. So where I'm going here is we have held in Ceridian and many other cases, the board is entitled to a reasonable interpretation of its own precedents even if we don't agree with its reading. And particularly in Ceridian we said if it is inconsistent with the facts of another case, then there's a problem. But if all it is is an extension and there wasn't a case that said the opposite, then we can uphold that. So as you said, there has never been a case before this one. In fact, there aren't very many Anheuser-Busch cases as far as I can see anyway. But there hasn't been a case where the similar facts occur and the opposite result. That's the exact point I'm trying to make is that it's true. The board could have said, hey, this has never been decided before. We think for policy reasons it's important to give a contemporaneous assurance and that a general policy is not enough. But they didn't do it. They said it's already been decided citing those cases, which they don't say that. The question is whether the board majority and its dissenters were unreasonable in reading the other two cases and whether those other cases are inconsistent with. That's a question we have to face, right? Correct. Okay, fine. All right. Further questions? We'll give you a few minutes at the end anyway. I know you're out of time. That's fine. Thank you. All right. Ms. Isbell. May it please the court, Kelly Isbell here on behalf of the National Labor Relations Board. I think I'd like to start with standing and rightness. Yeah, could you stand with the question of what the DNO means? Will they be in contempt? Are they bound by the new rule, by the boilerplate statement in the DNO? Or will they be treated as all other employers would be for that purpose? That matters for standing, I think. And I cannot answer that definitively. And the reason is because they did not raise that issue to the board, as they should have, in a motion for reconsideration following the board's order. They could have raised it to the board and asked the board for clarification. They could have also made some more definitive argument in their opening question. I understand your argument. But my question is, you can't tell us by reading that whether they're bound either, huh? I can tell you by comparing it to HTH. HTH Corporation had a lot of violations in it, some of which you overruled. But you enforced the board's order related to a similar violation, and that part of the order is very similar. The El Paso electric order is very similar. So these are all, though, about the application of an existing precedent, not about a new rule that was implied retroactively. Exactly. Right. So when I look at it, it looks to me like the same kind of order the board would have issued under Anheuser-Busch. Only as an implied retroactively. Right. So it would not be an unreasonable reading if we were to read it that way. It would not, Your Honor. Okay. Can I ask you another question on this subject? Yes. I don't know how to put this in the most diplomatic way. You can probably guess what the question is, which is no defense on the merits at all. No standing, but then no defense on the merits in case there is standing. Is this a – is there something going on here that I don't get? Is this just a strategy? Do you think we don't need to because our standing argument is so incredibly powerful? Some doubt about the merits? Some question about rightness to argue the case right now? What's going on here? It was a decision because we very strongly believe they have no standing and the case isn't right. It also has to do with the fact that the board's Detroit Edison test is very fact-specific. So I can't apply it in this case because the board didn't apply it in this case. I have nothing to say about the new test except maybe the board was reasonable in coming up with the test. But I can't apply it because it is so fact-specific. And any application to this company, to Piedmont, is so far down the road that I don't have any way to defend the board's order. Another witness statement comes up. The board might find they don't have to turn it over for whatever reason. Witness intimidation or the union steward was the person who committed the misconduct in question. I can't tell you how the board would come out in any particular way or how the board would have applied the new test in this situation because it didn't. So, yes, it was a briefing strategy decision because we honestly do not think the application of this test is right. I don't know. It's like playing roulette here. It's not the strategy I would take as a lawyer. I will take that back, Your Honor. And even on the cease and desist order, whether or not this went to contempt is so far attenuated. I can't even describe to you in a short sentence how it would go to contempt. First, there would have to be a witness statement that came up in an investigation that they refused to provide. The union would then have to refuse an accommodation. The employer under Pennsylvania Power and Light is obligated to provide a summary or provide some sort of accommodation. The union would have to refuse the accommodation, would then have to go to one of our regional offices and complain. The regional office would have to investigate. The regional office would have to recommend contempt to the general counsel, and then the general counsel would have to accept that recommendation and ask the board for authorization. So at any one of those points, any of those officials of the board could decide that this would be better decided in an enforcement proceeding. The regular administrative proceeding rather than going to contempt. So under the rightness doctrine, it is just too far attenuated to show an imminent harm or hardship to Piedmont. Further questions? Do you have further more to say? Unless you would like to talk about the merits of Hutton's witness statement. Well, I am curious as to why someone who's worked there for 40 years, I believe it was, and it's undisputed that the policy was that these statements would be kept confidential. Why is it reasonable for the board to construe its precedent to require, to say that that person wasn't really relying on any of that? For a couple of reasons. One is the board said that its cases from New Jersey Bell and El Paso Electric very clearly say there has to be an assurance. And remember, there's not a blanket policy at Piedmont that these statements will be held in confidence. There's a practice of assuring individuals individually of confidentiality. But there's no policy. There's nothing in the employee handbook, for example, that says witness statements will be held in confidence. For two of the witness statements, they told the employees these would be held confidential. For Hutton's statement, they did not. And what the judge found and the board affirmed was that the reason she provided it was because she knew she was going to get in trouble if she didn't report Mr. Barriott. She only reported after she learned that someone else had reported him for sleeping on the job and then decided she also better get in on the act. So it was the confidentiality provision, while she said she believed her statement would be held in confidence, the board found that based on its precedent, she had to receive an affirmative assurance of confidentiality and that the confidentiality was not, in fact, in any event, why she provided the statement. She provided the statement to get out of trouble. And she was, in fact, disciplined for not providing the statement sooner. Is it reasonable for there to be a rule that, I guess, employs the same standard for somebody like the charge nurse who's in a supervisory capacity and has a duty to report misconduct, so to speak, as you would apply to a pure witness to misconduct, a co-employee? Well, in fact, on the issue of witness names, the board has the same standard for witness names. So if you look at cases like Mobile Oil and Resorts International, one of the things the board looks at is whether or not the witness was provided an assurance of confidentiality, and they take that into account about whether or not you have to turn over witness names under Detroit Edison. With the charge nurses, the board made no finding about whether or not they were supervisors. That was not part of the consideration. And I believe all employees are required to report misconduct, not just supervisors. So I think it is completely reasonable for the board to want to know there is, especially in a situation where there's no policy written, right? There's nothing in the handbook. So employees would only know if the employer told them. And in this particular case under Anheuser-Busch, it is just a simpler, more reasonable rule. You tell everybody, rather than the board have to figure out, this person worked for five years, she should have known, and somebody who worked four and a half maybe shouldn't have known about the policy that she wasn't told about. All right, thank you. We'll hear from the intervener. Thank you, Your Honor. Let's address what the confidentiality policy was. At the Joint Appendix 871, the employer representative testifies, we have a practice of confidentiality. Nowhere does she say it's confidentiality as to the union. But confidentiality is subject to many exceptions. Even the EOC says that investigative policies, you assure the employee of confidentiality to the extent possible. Because there are many, I won't call them breaches, but many circumstances where this information isn't confidential. You share it with other managers. You may share it with a supervisor. You may, even in the Detroit Edison case, the employer offered, I'm sorry, one of the discipline cases, the employer offered, it was in the, and as a Bush case, actually, the employer offered to share the witness statement with the union's lawyer, provided the union's lawyer didn't share it with the union. So you can't have a blanket, absolute policy of confidentiality. And Judge Garland is perfectly correct that in arbitrations, you either produce the statement if the witness testifies or the union gets a subpoena, which is enforceable under the Federal Arbitration Act, to get the witness statements. So at some point. What's the, I guess I'm not embarrassed to disclose I have not participated in a union management arbitration because I can't have done everything in another life. But what is the practice with respect to disclosure of witness statements? Is it typical that if you actually get to the arbitration, that they are disclosed? Not typical. Sometimes, most of the time. It varies. And Mr. Dermot said it varies. I've had cases where the witness testifies. I say, have you given a statement? The employer hands it over and I use it for cost examination. There have been cases where I've subpoenaed witness statements. There have been cases where the statements have been given at the beginning of the procedure. And I can't remember one, but there have probably been cases where the employer has never disclosed a statement, and in part because they choose not to call that person as a witness. But I can assure you, in response to Judge Wilkins' comment, that it aids the arbitration process to give to the union the witness statement, sometimes redacted, so the union can make its own evaluation whether ever to go to arbitration. In this case, if you've got a worker sleeping on the job, I think I know where the union is headed. What about the summary of the witness statements? What's the practice with respect to that? I guess I read in some of these cases that summaries are provided. In this case, the union didn't ask for that, strangely. I don't think it happens a lot. Is that an exception to Anheuser-Busch, or not an exception but not covered by Anheuser-Busch? That is an exception because the board has narrowed Anheuser-Busch. It's very narrow now. So all Anheuser-Busch stands for is the statement. But Anheuser-Busch says you've still got to give, for other cases, the name of the witnesses, a summary of the statement, and other evidence that you might have that would disclose even who the witnesses are, so that all that the union is left with is not getting the exact statement. So let me just address the standing issue because I'm kind of in the middle of that, and I raise that in my intervener's brief because I'm often on both sides of this question. I'm one of the few lawyers that's litigated contempt cases both in favor of and responding to them. And I think Mr. Durham is not correct in the following respect, and the board is probably correct, but let me just explain why. That although the broad language, Judge Garland, that you read, could theoretically encompass a subsequent failure to provide the witness statement, that's highly unlikely, and we have a problem here, as Ms. Isbell pointed out, that if Piedmont Gardens was concerned that maybe they will be held in contempt later on for an order that's boilerplate, they could have filed a motion for reconsideration and said to the board, board, you didn't apply this rule in our case. Does this mean in the future it applies? And they never did that. That would have been the safest thing. But I think it's also clear that they would not be held in contempt, but I can't say it's an absolute certainty, so I want to be clear I'm not totally on the board's side. Well, some clarification looks like it's going to be necessary. Maybe it will have to come from us or from the board or something, but it does look like some clarification is necessary. Here it seems to be the easy clarification, that the board did not apply the rule in this case and therefore could not have attended that language to apply to this specific circumstance so that if a contempt case. No, I agree. That's why I read it. That's why I didn't think it applied. That appears to be why everybody thinks maybe it doesn't apply, but it would be helpful. And I'll just move it. I think that's the way it applies, but I, again, am careful to say one could really stretch this to say in the future, and I think that would only occur if the courts of appeal enforced the new rule so it was clear in the future that if they didn't provide it, it would. Okay. Thank you. Thank you very much. I know there's no time left. We'll give you another minute. Yeah. Your Honor, just with respect to the standing and all of that, I think it's clear from counsel for the NLRB that they can't give me an assurance or our client an assurance if a million decisions have to be made, and we just don't tell our clients to do things that subject them to contempt. And as far as ripeness, there's no case I've ever seen that says if you're subject to an injunction, you have to wait until you're held in contempt in order to attack the underlying case. I mean, I just don't think that's sensible. One other thing about witness names that was just brought up here, the cases that stand for witness names, there's a distinction here that nobody seems to be focusing on, in that the cases only talk about the names of witnesses, not the names of people who gave witness statements. That's why they're so different. You could have 150 people witnessing somebody throw a monkey wrench in an assembly line, but only one person came forward to give the statement. So that is a very different thing. So the board said here that it's the same thing as a witness names. It just isn't. Okay. Further questions? All right. We'll take the matter under submission. Thank you all.
judges: Garland, Henderson, Wilkins